**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **EMILY BAIRD,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| **MIKE'S CLAM SHACK, INC.,** | ) |
| | ) |
| Defendant | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Emily Baird, by and through undersigned counsel, hereby complains against Defendant Mike's Clam Shack, Inc. as follows:

**INTRODUCTION**

1. This case arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4571 *et seq.*

2. This case challenges the Defendant's: (1) unlawful sexual harassment of Plaintiff in violation of Title VII and the MHRA; and (2) unlawful retaliation against Plaintiff in violation of Title VII and the MHRA.

**THE PARTIES**

3. Plaintiff Emily Baird ("Ms. Baird") is an individual residing in the Town of Kennebunk, County of York, and State of Maine.

4. Defendant Mike's Clam Shack, Inc. ("Mike's" or "the company") is a duly organized Maine Corporation with a principal place of business in the Town of Wells, County of York, and State of Maine.

5.	At all times herein relevant, Ms. Baird was an employee of Mike's.

6.	Mike's has had more than 14 and fewer than 101 employees on its payroll in each of 20 or more calendar weeks during the current and/or preceding calendar year.

## JURISDICTION AND VENUE

7.	Prior to filing this Complaint, Ms. Baird filed a charge of discrimination with the Maine Human Rights Commission ("MHRC") and the EEOC.  Ms. Baird received a notice of right to sue letter from the MHRC pursuant to 5 M.R.S. §§ 4612(6) and 4622(1)(C) on or about July 23, 2015.

8.	Venue is proper in this Court because all of the discriminatory practices alleged herein occurred in the County of York and State of Maine.

9.	The Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## STATEMENT OF FACTS

10.	Mike's Clam Shack is a restaurant in Wells, Maine that is owned and operated by Michael ("Mike") McDermott.

11.	Mike's employed Ms. Baird as a take-out waitress and/or hostess from May 17, 2013 until February 3, 2014, when the company constructively discharged Plaintiff.

12.	Ms. Baird was a shy 19-year-old girl who had never even had a boyfriend when she began working at Mike's, which was her first real job out of high school.

13.	Ms. Baird is a female and therefore a member of a protected class.

14.	Mike's employs a number of male seasonal workers from Jamaica as kitchen staff during the busy summer season.

15.	The seasonal Jamaican workers whose conduct gave rise to this litigation included

individuals known to Plaintiff by the names Earl, Solo, Jimmy, and Oral.

16. Another Jamaican employee named Romeo was at all times herein relevant a year-round employee of Mike's.

17. Shortly after Ms. Baird began working at Mike's, Oral made offensive, sexually explicit comments to her about his name, insinuating that it was related to oral sex.

18. Similarly, Romeo would lick his lips in a sexually suggestive manner whenever Ms. Baird walked by him through the kitchen. Romeo would then laugh at Ms. Baird's reaction and make comments to other Jamaican employees about her in another language.

19. Other employees made sexually suggestive comments about Ms. Baird's appearance, calling her "baby," and trying to touch or grab her.

20. These male employees also told Plaintiff that a pretty young girl like her, with blonde hair and blue eyes, would earn them "a lot of money" as a sex slave in Jamaica.

21. Ms. Baird complained to management about the above incidents, which she found to be embarrassing, threatening, offensive, and unwelcome.

22. Shortly thereafter, Romeo confronted Ms. Baird in the kitchen, angrily demanding to know if she had been "saying shit" about him.

23. In August of 2013, Jimmy cornered Ms. Baird in the kitchen, pressed her up against a refrigerator, and grabbed her just beneath her breast and on her buttocks.

24. Another day, Oral said to Ms. Baird in the kitchen at Mike's: "I want to fuck you up against this fridge."

25. These instances of unwelcome sexual comments and sexual touching made Ms. Baird feel threatened, humiliated, and frightened.

26. When Ms. Baird told Mike McDermott about Jimmy pinning her against the

refrigerator in the kitchen, Mr. McDermott responded by saying: "I thought Jimmy was gay." He then assured Plaintiff she would not be bothered by the kitchen staff again.

27. Despite Mr. McDermott's promise to correct the above behavior from his kitchen staff, a week later Jimmy engaged in another instance of unwanted physical touching of Plaintiff by reaching out and stroking her back in the kitchen.

28. Romeo made further offensive comments to Plaintiff, including without limitation a false statement that she had been "fingered" by one of the workers.

29. When Ms. Baird made it clear that this behavior was unwelcome, Romeo called her a "bitch."

30. Employees of Mike's were required to park down the street from the restaurant, and pass by the temporary housing where the above seasonal workers lived when walking to and from their cars.

31. Ms. Baird had to obtain permission to park her car closer to the restaurant because she was in fear of the above-described employees, who would yell out their windows at her or stand near her car late at night, causing Plaintiff to fear for her safety.

32. Plaintiff feared that she would be raped, kidnapped, or otherwise harmed by these employees, and she expressed this fear to management.

33. Ms. Baird's fear in this regard was exacerbated by the fact that some of the Jamaican workers had told her they could "get a lot of money" by selling her into the sex slavery business.

34. Although he gave Ms. Baird permission to park her car closer to the restaurant because she was fearful of the kitchen staff, Mr. McDermott blamed Plaintiff for the above-described sexual harassment, making comments such as:

- "You're just a Jamaican magnet";
- "Most girls like to be talked to this way";
- "You're just a beautiful girl"; and
- "You girls wear those tight skinny jeans."

35. The above comments by Mike McDermott, the owner of the company, were additional instances of unwelcome sexual harassment.

36. One night in September of 2013, Ms. Baird and another female employee who was in high school at the time were working at the take-out window. After Solo finished his shift that night, he and two other Jamaican men unknown to Plaintiff lurked around the building outside the take-out window.

37. Solo and the other men frightened Ms. Baird and her co-worker by asking the girls where they lived, where they went to school, what they did for fun, and how old they were. The men leaned in toward Ms. Baird and her co-worker through the take-out window, again putting Plaintiff in fear of physical harm.

38. Another employee who came into the take-out area was so concerned by Solo's behavior that she told the manager on duty about the incident. The management had to tell Solo to leave the girls alone, stop harassing underage girls, and leave the take-out area.

39. Ms. Baird arrived at work the next morning feeling very anxious because Solo was working the same shift. Solo behaved in an angry and hostile manner toward Plaintiff and her co-worker, yelling at them and denying that he had done anything inappropriate.

40. Ms. Baird found it unbearable to work in the kitchen with Solo and she ended up having a panic attack and crying at work.

41. Ms. Baird asked to go home because she was so upset and humiliated by the

situation. The manager on duty—who was also Ms. Baird's cousin, Mary Spicer—refused to let her go home. In refusing to let Plaintiff go home, Ms. Spicer explained that she did not want Ms. Baird's mother to find out what was going on at Mike's.

42. As a result, Ms. Baird was forced to sit in a different area of the restaurant and finish out her shift in tears.

43. Plaintiff later asked to be moved to another position in the restaurant where she could avoid interacting with the employees who had sexually harassed and retaliated against her. This request was either ignored or denied by management.

44. The company instead forced Plaintiff to continue working in a hostile and abusive environment.

45. A manager named Shawn, who was in charge of the kitchen staff, told Plaintiff he did not want to fire Solo because the season would be over in a few days and Solo would be gone. Shawn said he did not want to risk having Solo get angry with or retaliate against Plaintiff. Shawn also indicated that if he fired Solo, he might end up with his tires slashed.

46. Employee phone numbers were posted on the kitchen wall at Mike's. After the season ended in October and many of the seasonal employees returned to Jamaica, Plaintiff continued to receive phone calls and text messages from them. When Plaintiff explained this to Mike McDermott, he responded that the men who had harassed her would not be "dumb enough" to do anything "serious."

47. Ms. Baird was profoundly upset by all of the above events, to the point where she began having frequent panic attacks, insomnia, physical symptoms, generalized anxiety, and nightmares.

48. Mike McDermott assured Ms. Baird he would not hire the above employees back

6

again for the next season.  However, some employees such as Romeo continued to be employed at Mike's year round.

49. Ms. Baird's emotional distress increased as she continued to work at Mike's through the winter.  On January 28, 2014 she visited the doctor and was diagnosed with post-traumatic stress disorder.  Ms. Baird's doctor recommended counseling and gave her the following work restriction: "no working with offending employees."

50. Following this diagnosis, Ms. Baird's mother called Mr. McDermott and explained that her daughter was physically sick as a result of the harassment she had faced in the kitchen at Mike's.  Ms. Baird's mother explained that the doctor had taken Ms. Baird out of work.

51. Mr. McDermott took Ms. Baird out to lunch to discuss the situation and requested permission to talk to Ms. Baird's doctor.  However, he did not ask to see the doctor's note and did not file a first report of injury with the Worker's Compensation Board, instead saying Ms. Baird's parents' insurance would cover the bill.

52. Mr. McDermott told Ms. Baird the situation had been handled and he had "nipped" the sexual harassment "in the bud."

53. Ms. Baird pointed out that Romeo still worked in the kitchen, but Mr. McDermott did not offer any solution to this problem.  Instead, he said: "I need to know if you had sex with" any of the seasonal employees, to which Ms. Baird responded emphatically in the negative.

54. Ms. Baird was horrified to be asked this question because she was fearful of and humiliated by these men and had never given any indication that she was interested in them romantically.  Further, Mr. McDermott's inquiry suggested that Ms. Baird was to blame for the sexual harassment she had faced, rather than recognizing the unwelcome and frightening nature

of the conduct.

55. Although Mr. McDermott claimed he would not hire the offending employees back for the next season, upon information and belief at least Jimmy returned to Mike's the following summer.

56. Rather than investigating Ms. Baird's complaints of sexual harassment or taking further steps to correct the problem, Mr. McDermott simply offered her Celtics tickets and said she could come back to work whenever she wanted.

57. Ms. Baird was unable to return to work after February 3, 2014, because the company had constructively discharged her by failing to correct the hostile and abusive work environment in the kitchen at Mike's.

58. Another manager from Mike's named Shelly took Plaintiff out to lunch in March of 2014. When Plaintiff told Shelly she was fearful of Romeo and the other offending employees, Shelly explained that Romeo had just gotten defensive and angry about Plaintiff's allegation of sexual harassment because he had faced similar allegations in the past.

59. Shelly said to Ms. Baird that her mother had "really scared us" when she called to report that Plaintiff's doctor had taken her out of work. Shelly minimized the extent of Ms. Baird's emotional distress from sexual harassment, stating: "We thought it was something more serious."

60. Based on the foregoing, the management at Mike's was well aware of the ongoing, grossly inappropriate sexual harassment occurring in the kitchen.

61. Mike's knowingly and willfully violated Plaintiff's state and federally protected rights.

## COUNT I –HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII
### (42 U.S.C. § 2000e *et seq*.)

62. Plaintiff repeats the allegations contained in Paragraphs 1 through 61 of her Complaint as if fully set forth herein.

63. Mike's subjected Ms. Baird to unwelcome sexual advances, comments of a sexual nature, inappropriate sexual touching, and other instances of sexual harassment that Plaintiff found unwelcome, humiliating, offensive, and frightening.

64. The above harassment of Plaintiff was based upon her sex.

65. The above sexual harassment of Plaintiff was sufficiently severe or pervasive so as to alter the condition of Plaintiff's employment and create both an objectively and subjectively hostile and abusive work environment.

66. The management at Mike's knew that Plaintiff had been sexually harassed, but the company failed to investigate or take other action to correct the conduct.

67. Based on the foregoing, there is a sufficient basis for holding Defendant liable for the offending employees' conduct.

68. By ignoring Plaintiff's complaints of sexual harassment and creating a hostile work environment that gave Plaintiff no choice but to end her employment, Mike's constructively discharged Plaintiff from employment.

69. As a result of Mike's discriminatory actions, Ms. Baird has suffered and is entitled to damages, including but not limited to: lost wages and employee benefits, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Emily Baird requests that the Court award her damages in the form of lost back pay, front pay, compensatory damages, liquidated/punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

**COUNT II – QUID PRO QUO SEXUAL HARASSMENT IN VIOLATION OF TITLE VII**
**(42 U.S.C. § 2000e *et seq*.)**

70.     Plaintiff repeats the allegations contained in Paragraphs 1 through 69 of her Complaint as if fully set forth herein.

71.     Plaintiff's negative reaction to the sexual harassment she faced in the kitchen at Mike's affected a tangible aspect of her employment because when she rejected the unwelcome sexual advances, she faced increased hostility from the kitchen staff.

72.     Defendant knew of the severe pattern of sexual harassment in the kitchen but failed to take action to correct it.

73.     Plaintiff's job, benefits, and/or continued employment at Mike's were conditioned on her acceptance of sexual harassment from certain employees in the kitchen.

74.     Mr. McDermott also sexually harassed Ms. Baird by making inappropriate and unwelcome sexual comments to and about her, further making Plaintiff's acceptance of unwelcome sexual harassment a condition of her employment.

75.     Based on the foregoing, there is a sufficient basis for holding Defendant liable for the conduct of the employees described above.

76.     As a result of the aforementioned quid pro quo sexual harassment, Ms. Baird has suffered and is entitled to damages, including but not limited to: lost wages and employee

benefits, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Emily Baird requests that the Court award her damages in the form of lost back pay, front pay, compensatory damages, liquidated/punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

### COUNT III – RETALIATION IN VIOLATION OF TITLE VII
**(42 U.S.C. § 2000e *et seq*.)**

77. Plaintiff repeats the allegations contained in Paragraphs 1 through 76 of her Complaint as if fully set forth herein.

78. Plaintiff engaged in protected conduct under Title VII by opposing a practice made unlawful by Title VII in the form of a hostile work environment and quid pro quo sexual harassment.

79. Plaintiff engaged in the aforementioned protected conduct in good faith.

80. As a result of her protected conduct, Plaintiff suffered an adverse employment action(s), including constructive discharge and retaliation.

81. A causal connection exists between Plaintiff's protected conduct and Mike's adverse employment action(s).

82. For all of the reasons set forth above, Mike's retaliated against Ms. Baird in violation of Title VII.

83. As a result of Mike's retaliation, Ms. Baird has suffered and is entitled to damages, including but not limited to: lost wages and benefits, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Emily Baird requests that the Court award her damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT IV -- VIOLATION OF THE MAINE HUMAN RIGHTS ACT
### (5 M.R.S. § 4571 *et seq.*)

84. Plaintiff repeats the allegations contained in Paragraphs 1 through 83 of her Complaint as if fully set forth herein.

85. For all of the reasons set forth in Counts I through III above, unlawful discrimination and retaliation against Plaintiff on the basis of sex have taken place in violation of the Maine Human Rights Act.

86. As a result of Mike's discriminatory actions, Ms. Baird has suffered and is entitled to damages, including but not limited to: lost wages and benefits, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Emily Baird requests that the Court award her damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## **JURY TRIAL DEMAND**

Plaintiff Emily Baird hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.


Dated:   October 1, 2015                              */s/ Laura H. White*

                                                                   Laura H. White, Bar No. 4025
                                                                   *Attorney for Plaintiff*
                                                                   BERGEN & PARKINSON, LLC
                                                                   62 Portland Rd., Suite 25
                                                                   Kennebunk, ME 04043
                                                                   (207) 985-7000
                                                                   *lwhite@bergenparkinson.com*